Good morning, Your Honors. My name is Lori Tyker, and I'm appearing on behalf of Petitioner-Appellant Mr. Kevin Holmes. I would ask to reserve, and I'll attempt to reserve, five minutes for rebuttal. A number of issues included in the briefing. However, this morning I'd like to discuss with you two of those issues, the improper use of felony murder and the improper hearsay that was admitted at trial. Regarding the use of felony murder in this case, as Your Honors are well aware, Kevin Holmes was charged in Nevada State Court with three counts, open murder, attempt murder, and robbery. He was charged with that. Those charges went before a Justice of the Peace at a preliminary hearing. As a result of that preliminary hearing, that Justice of the Peace found that there was not even slight or marginal evidence that existed at that time of the robbery. So as a result of that, Mr. Holmes was bound up to the district court and was facing charges, and information was filed by the State. Well, the Nevada Supreme Court talks about that and says in deciding appellant's original direct appeal, this Court held that the State could prosecute appellant for murder based on theories of premeditation and felony murder, even though the underlying felony had been dismissed by the Justice Court. So isn't that a statement of Nevada law, that it's perfectly appropriate to have done that? Our argument is that it is not. And the reason being is that although that was the decision in Holmes 1, what I would direct Your Honors to is that actual opinion. And what the opinion says, and why this is a violation of due process under Hicks, is that at the time of Holmes 1, at the time of his first trial, the law in Nevada was clear that it was mandatory that in order to proceed on the felony murder, you have to charge the underlying offense as the substantive offense. You have statutory basis that sets out that procedure in terms of preliminary hearing, grand jury, or whether you're going to file something, whether or not the State's going to bring it forth pursuant to affidavit. Neither of those things apply here. You also had case law in Nevada that was Alford, Alford v. Nevada, which states that there must be a basis for the uncharged crime. So you're saying that in the original appeal, the Court got it wrong? Yes, I am. And the reason being, and unfortunately this is something that we see quite often with the Nevada Supreme Court, is that if you look at the language of that opinion, and if I can direct you to the EOR-205, what the Court says there is consistent with our approach. What approach? The approach that had been the law prior to Holmes 1 was exactly what I said. Do you have to show us some clearly established Supreme Court law that validates your argument in this case? And if so, what is it? The clearly established Supreme Court law that establishes the due process violation here is Hicks. In Hicks, because Nevada law is clear, you have to charge that. Kevin was deprived of the liberty interest under the 14th Amendment and pursuant to Hicks, that where you have clear Nevada procedural law, you can't just because, let's see, a due process violation under the 14th Amendment where the defendant's interest isn't merely a matter of State procedural law, but a liberty interest. In Hicks, it was similar. The habitual criminal statute there set the penalty at 14 years. The Court subsequently found that, no, that penalty had to be set by a jury. We have a similar situation here. We have a situation where, unlike what the government in the Nevada Supreme Court has argued in that this is okay under Shad, this is okay under Holmes, the point here is that you were not entitled under the State was not entitled under State law to put that theory before them. Shad in that case was a situation where, yes, you can put multiple theories, the felony murder and the open murder, in front of the judge, in front of the jury, and if the jury comes back, it doesn't matter if half of them found premeditated and deliberate murder and half of them found felony murder, that's all okay. This isn't Shad. The situation here is that you weren't entitled, the State wasn't entitled to put that felony murder theory in front of the jury to begin with. And that's not the due process violation under Hicks. Okay. Let me make sure I understand what you're saying. There is no place in this record that I know of that Holmes has argued that there was insufficient evidence to convict him of murder. I didn't find it any place in this record. That is not one of the issues that has been briefed. All right. So there is sufficient evidence, I guess, at least we haven't been challenged with, he could be charged with murder. Straight murder. Straight murder, yes. Straight murder in terms of premeditated and deliberate. Correct. Correct. There's no Supreme Court case that we know that says that one must be charged with the underlying felony in order to be convicted with felony murder. I didn't see one coming to Judge Trott's question and I haven't found one. Our argument is that this is a due process violation under Hicks. So the best that we have then is, as I understand it, you want this court to tell the Nevada Supreme Court that they don't know what they're talking about when they made their decision that it was okay to do this. Under Nevada law. Under Nevada law. But the due process violation is that pursuant to Supreme Court law such as Hicks and Stromberg and Griffin and Zant versus Stevens, what you're bringing in here is due process. Well, but Griffin. Procedural due process rule. But Griffin really says that a factual challenge to a general verdict does not state a constitutional problem as long as one of the theories is sufficient. That's what Griffin says. So if I go under Griffin, we don't have a problem. It really says to me what you're arguing to me is you want me to tell the Nevada Supreme Court they didn't apply their own law correctly and therefore Hicks applies. Exactly. And the constitutional due process violation is that. And the importance of Stromberg and Griffin, it goes to the prejudice in the case. And the prejudice in the case in terms of whether or not it had a substantial and injurious effect or influence in determining the jury's verdict. And here it did. If you take a look at the facts of this case, and the facts are somewhat complicated because there's a lot of players here and there's a lot of players that are saying a lot of different things happened. But if you take a step back and look at the case, the case involves a dispute over drug money and a crack party that had taken place for a couple days before the actual incident. The evidence of premeditation and deliberation that was put forth, you may necessarily find for the attempt murder suspect. Because at that situation, whoever is the shooter, and again, we are by no means conceding that that would be Kevin Holmes. Whoever is the shooter in that situation determines that the second attempt murder suspect, they're going to eliminate the witness. You can argue premeditation and deliberation there. The importance of the felony murder in this case is when you just look at the logical situation of the facts that went down in that apartment, why would Kevin go over there to kill a woman over $100? The logical assumption is that whoever, the shooter, went over there was to get the money back, not to necessarily kill someone. That's where the felony murder comes in, and that's why the felony murder is so important in this situation. And the felony murder, again, the justice of the peace didn't even find that there was slight or marginal evidence to be able to prove that robbery. And the problem, I'll go back to what I asked you before, and I'll read from the district court. Petitioner does not identify a decision of the Supreme Court of the United States that clearly established whether pursuit of a felony murder theory when the underlying felony is dismissed is constitutionally acceptable. You don't have any, there are no cases that say that. Again, my argument is that under Hicks. There are no cases that say that, are there? Specifically on point, no, there's not. Okay, and that's the problem that we have with AEDPA and what Congress has now told us. We've got to look to Supreme Court precedent that says that. And you don't have any. I don't have anything that says that specifically on point in terms of the facts of this case. However. Well, not in terms of the facts of this case, but in terms of the principle that's involved. In terms of the principle, however, my argument is that you can construe Hicks. See, that's what we've been told. Don't do that. You can't construe things. It's got to be pretty clearly established. At the Supreme Court level. They didn't even want to hear from the rotten old Ninth Circuit anymore. That's the hang up I have. That's probably why it was enacted as well. Maybe I'm influenced by Dwight. I don't think it was the Ninth Circuit. Oh, okay. And again, and also I would ask, Your Honor, I understand that that's a situation and that's something that I've dealt with to the best of my abilities. I would also ask, Your Honors, to take a look at the Ninth Circuit case that you have found in Suniga v. Bonnell, which is also cited in the record. I'm probably murdering the pronunciation of those names. Again, that in that case, what that opinion was grounded in Stromberg and Yates in that if there was a second-degree felony murder that didn't exist, it was an error of State law, and therefore pursuant to fundamental fairness, if you can't tell what the jury used, just like if felony murder, second-degree felony murder doesn't exist here, the felony murder is nonexistent because there was no robbery. And I'd ask that you look at that as well. Judge Trott has pointed out that no matter what circuit it comes from, the circuit's reading of a Supreme Court decision is not what drives the engine under AEDPA. It's really pointing to some Supreme Court decision. It's very different, indeed, from, for example, the qualified immunity under Anderson that says, well, if it looks something like it, then maybe it's a duck. There has to be a Supreme Court opinion that says pretty clearly it's a duck. And the difficulty that I think all of us are having here is trying to find something that says that once the underlying felony offense is gone, it's not permissible to charge somebody for felony murder. And absent such a decision, how do we cope with AEDPA? And, again, my argument is that you cope with AEDPA in that it's a procedural due process violation looking at Hicks and looking at Senega and that line of cases in that the Nevada State courts can't do this. They can't have two separate sets of books where they're going to say, well, you can do it this way, and then all of a sudden the case comes along like Holmes, and they say, oh, well, consistent with our approach, which we have no idea what the approach is, because no case law is cited, consistent with our approach, now we're going  And that's the argument. As you move to your hearsay argument, I expect you're well aware that we're not going to look too much to Crawford v. Washington in this particular matter. Correct. And, therefore, we're really saying, did the good judge make a mistake when he was saying that this was the state of the mind of the declarant rather than hearsay? And what's the standard of review there, having been on the district court making those decisions? What is my standard of review in determining whether the district court was wrong in that decision? The standard of review that you have, Your Honors, under Brecht, whether or not that error had a substantial and injurious effect or influence in determining the verdict. And what it comes down to here, and the bottom line in this case, is why it's hearsay, why the statement is hearsay. What we have is we have a statement that was made by, and the declarant, the person who made the statement, was Eric Snyder. Eric Snyder was also the alternative suspect in this case, which is why when the statement came in that it was devastating for the defense. The statement from Snyder, who was the big-time drug dealer, the declarant, said to Derek Smith, another participant in this scenario, a friend of Kevin's that had smoked crack with him for at least anywhere from a day and a half to two days, depending on whose testimony you go with, was that Snyder, the big-time drug dealer, told Derek to go to tell Kevin to go ahead and buy cigarettes. He's not mad at him for smoking up this $800. He's not mad at him that the crack's gone. It's no big deal. That's the situation. What the Nevada Supreme Court held and what the Attorney General is arguing is that that statement isn't hearsay, that it wasn't introduced for the truth of matter, but for Smith's intentions in going over to talk to Derek. That is too simplistic, quite frankly. That statement ---- No. But, frankly, that is the ruling that we have to look at, correct? Correct. And then we have to apply Supreme Court precedent prior to Crawford to that. Correct. And that would be Ohio v. Roberts, Idaho v. Wright, that type of thing. When you apply those, first of all, we don't have any type of a situation ---- this is where the Confrontation Clause comes into scrutiny and why, in terms of evaluating the statement and whether or not it's hearsay, why it's so incredibly important. Hearsay is not hearsay. It is hearsay if it's offered for the truth of the matter. Going back to Wigmore and evidence and all of that, hearsay is hearsay and it's offered for the truth if the content has any significance. And that seems to be the key indication in terms of whether or not you're looking at whether or not something's offered for the truth of the matter, the content. For example, if you want to cross that declarant, it's the truth of the matter. If there's no reason to cross that declarant, and again, the declarant is Eric Snyder, then it's not offered for the truth of the matter and it's not hearsay. Here, the statement was used to bolster the premeditation and deliberation because what you have here is the declarant. Eric Snyder makes the sentence. It undercuts the defense. It makes this guy, who's the big-time drug dealer, look like he's totally reasonable. He's a really nice drug dealer in that it's cool that he lost $800. Roberts. State of mind an exception to the hearsay rule? I'm sorry? Is state of mind an exception to the hearsay rule? Yes. Doesn't this show a state of mind and an intention? It shows. Let's see. It shows a state of mind and the intention. Yeah. It's the fact that it was said that distinguishes it from hearsay. That is, if it's offered to prove that it was said, that has nothing to do with the truth of the underlying statement itself. And if the fact that it was said may be drawn as creating an inference of what intent was, that makes it nonhearsay, right? Right. Okay. Again, what's important here and what I'd ask Your Honors to take a look at is Your Honor, in terms of taking a look at the state court ruling on admissibility of hearsay, it does generally fall outside of Federal review, however, where the confrontation clause has been alleged. We need to take a look at that. And again, under Roberts and Wright, what you have here is you have a situation where there was absolutely no inquiry by the court in terms of what happened, that if the person was unavailable, that would be Eric Schneider. There was absolutely no evidence that this person was unavailable. Nothing was even done in terms of an inquiry as to whether or not why that person couldn't testify. And again, the second standard, whether or not that testimony has any indicia of reliability. Again, you have a situation here where it just undercuts any kind of a defense that Kevin had in this case, where you have the statement that was admitted to show that Eric Schneider's motive in this case, which is substantial, he lost $800 in this fact. He's not even there, so that the defense can't get up and cross and say, oh, so this is okay with you? This is all right that this $800 is gone? And you're a very magnanimous drug dealer here if you're not upset about this. There's also testimony in the case that goes to the fact that Eric was the one who was allegedly upset about the drug money being gone and not Kevin. And so all of that, again, hits to the prejudice and why this is damaging to the defense. The Court has an obligation under Brecht to review it if admission of that testimony could have affected even one juror's decision. The State makes an argument that there were other suspects or, I'm sorry, other witnesses that testified that he had made some kind of a threat. That Kevin was upset about all of this. But again, you need to take a look at all these witnesses. Those came from two women in this case, one who admitted that she'd been in a drug-induced coma for nine days on and off, the other that she was about to torch up when this shooting took place. And so all of these witnesses' credibility was greatly at issue. And adding yet another statement on could have been devastating to this case and could have affected even one juror's decision in this case. And with that, I reserve any time in rebuttal. Thank you, ma'am. Good morning. Vic Schulze for the respondents. I'd point out that when the police got to this apartment and found the victim's body laying on the sofa in the living room, the victim's purse had been torn open as though somebody had gone through that purse looking for something. There was testimony adduced at trial that the petitioner, the defendant in this case, had accused the victim of taking his drug money. This party had gone on for 24 or 36 hours. It was Holmes who was carrying around a bag, as I recall from the trial testimony. He was telling everybody that he had a lot of money in this bag. He was sending people out to buy more drugs. You're arguing the substantive validity of felony for felony murder purposes. What's the effect of the trashing of that charge by the justice of the peace under local law? The what the Nevada Supreme Court said as a matter of State law, and it would be my position, that the Stromberg-like, and I would call it a Stromberg-like claim in this case, the first claim, is actually an issue of State law. I don't think it's amenable. It's been federalized at a superficial level in the pleadings. It's essentially a State law claim. What happened was the justice of the peace simply did not bind over for trial under our system in Nevada, that robbery charge. What the Nevada Supreme Court said was, interestingly, citing cases from other under the felony murder theory, you don't have to charge the underlying theory. They didn't charge it. Under Nevada law, without going through a secondary process that we have where a prosecutor can override the failure of a justice court judge to bind over, you file an affidavit, and you essentially try to override that decision. Absent that, the prosecutor in this case could not have filed the robbery charge. But the bottom line here is they didn't file the robbery charge anyway. Stromberg and Yates, that entire line of cases, needs to be read through the lens of the Griffin case. And in that case, the Supreme Court was very clear in distinguishing, even though they analyzed Jackson versus Virginia, which I think, you know, I'm impressed with the argument in that case. On the other side, the side that does not help me, the issue there was factual insufficiency versus legal insufficiency. The other side, the side that would not support me, made the argument that's an illusory distinction in that case, because under Jackson, factual insufficiency is legal insufficiency. That is a constitutional violation. But the Supreme Court was going to be, was insistent on maintaining that distinction. And just exactly as happened in this case, they said it doesn't matter if your issue only is factual insufficiency. That alone, in my view, even if this were a Federal law issue, and I don't think it is, but if it were a Federal law issue, I think looking at Stromberg through Griffin destroys that argument, because they said exactly as the argument is here, there was factual insufficiency. But under Griffin, that's not enough to raise a Stromberg case. On the issue of the hearsay, my reading, I have to say, my reading of what the Nevada Supreme Court did is right on the money. They said it's not hearsay. I would point out, and I've got this in my answering brief starting at 16, Holmes has admitted the rest, as they say on the radio, the rest of the story, the rest of the testimony from his analysis. His argument is it really was not just a verbal act. My position, it was simply a verbal act that went to his motive, exactly what the Nevada Supreme Court said, but they left out the rest of the testimony, and that was, well, did you do that, because he said he was going to go to the apartment. Did you do that? Yes, I did. Clearly, the rest of the testimony goes to his motive and what he did. So you went and got some cigarettes? Yes. I'm now on page 17 of my answering brief. Yes. Then where did you go? Back to the dope house where he was. And what did you do? Well, the door was open, and I just, I kindly knocked on the door, you know, inside the door, walked in. I was explaining what his cousin told me to do, told me to, he got off the couch, went in, reached on the top of the cabinet, didn't know what it was, and he stabbed me in the rib cage. So it's clear, I think, when you read the rest of the testimony, that, in fact, the point of the elicitation of this testimony simply was to go to the state of mind and explain what he did, because immediately after the complaint testimony, the witness then told exactly what he did, which was he did what he was told to do. I would also point out it's difficult to argue, I think, that this is hearsay when, in fact, it was not made, the specific statement that was complained of was not made in the form of an affirmative statement. It was a command. Go there and tell him I'm not mad at him. Do we know that he's mad at him? Do we know the jury believed he was or wasn't? No, it doesn't really matter. It's a command. I'm ordering you to do something. I would suggest that that's that kind of statement can't be hearsay, because it's in the form of a command, and that's especially true, I think, when you look at the fact that the remainder of that testimony then went into what he actually did, and he did, in fact, follow the very command and went to the house. You invert the sequence, it kind of proves your case. If they were to ask him, what did you do, and he would have said X, Y, Z, and then they would have said, why did you do that? And then he would have made that testimony would have come in. I mean, that's clearly not hearsay. It explains why he did something. It shows a state of mind. Are you saying there's a difference, that it would be different if the order was different? I'm saying that it sort of proves your case by pointing out that subsequent question. Well, I think if you look at the larger context by looking at the second half of the testimony that was complained of, I understand that at trial, at prelims, any kind of live hearings, an issue is always going to come up. There's always a temptation when somebody tries to get evidence of a mere verbal act in for the other attorney to jump up and say, oh, hearsay, hearsay, simply because words came out of somebody's mouth. But, in fact, not only even still under Crawford do a lot of those hearsay nontestimonial in the nontestimonial context, do a lot of those hearsay exceptions still exist, but a lot of words that come out of people's mouths are never intended for the truth, and they're simply verbal acts, and verbal acts are never hearsay. A couple more issues in the case. I do want to point out sort of as a global issue here that because we're dealing under AEDPA and we've got such a high standard of review, first case this morning on the docket that appears not to be a direct appeal case, so we're dealing with a higher deferential standard. I don't mean to belittle the interests of Mr. Holmes, and I'm not intending to belittle the importance of what we're doing here today, but from my standpoint, and I think from, I think objectively, although maybe we always think our own thoughts are objectively reasonable, these are pretty garden variety kinds of claims, and I think under the AEDPA standard it's difficult. We have a Strickland claim, we have a prior bad act claim, we've got some pretty basic stuff, and it's pretty difficult, I think, under the AEDPA standard to come in here and say the Nevada Supreme Court doesn't have the ability to correctly analyze what are basically some pretty garden variety claims. They're really not sexy claims. There's really nothing terribly controversial here. It's sort of basic law. The Nevada Supreme Court made a decision under AEDPA and all the cases, many of which emanated here in the Ninth Circuit, went to the Supreme Court. Even if we would disagree with what the Nevada Supreme Court did or if we would have done it differently had this been a direct appeal case, under AEDPA that's not a high enough standard. The standard is their decision has to be objectively reasonable. One good example is the prior bad acts claim, which I think is Claim 3. As Judge Pro found, there is no case directly on point because the Supreme Court's never dealt with prior bad act issues. I agree with that. I would also point out that the Nevada Supreme Court said that for two of those issues, the stabbing and the drug dealer statement that came out of the testimony, that those, in fact, were not irrelevant and, in fact, were relevant because they went to motive. The stabbing was relevant. The statement that Holmes was a drug dealer, relevant in this case, according to the Nevada Supreme Court, so not problematic as a matter of State law. On the issue of whether or not Mr. Holmes was a gangbanger, the Nevada Supreme Court corrected by a corrective instruction immediately, but it was never solicited by the State. I'd also point out we need to back up and look at this case, you know, with a little bit of sort of real-world viewpoint. Look at the testimony in this case and then look at the sort of mild manner, the mild characteristics, if you will, of the prior bad act allegations. This is a guy who was carrying around a wad of money. They were at a crack party. He went back with two eyewitnesses, or perhaps I should call them earwitnesses. One was in the – I guess they were both in the kitchen. Two witnesses to the shooting. They identified Holmes in a lineup. They knew Holmes' voice. They heard the shots. The woman in the kitchen who was hiding after the first shot heard the second shot when the first victim had run out into the living room and been shot for the second time. That testimony is completely consistent. The point here is when we're looking at the – at Claims 5A and 5B, the Strickland claims, the State's case was pretty good. And in Strickland, there's an outcome determinative sort of test where the results have been different. In fact, the Nevada Supreme Court for the first Strickland case said that the – there was no prejudice. For the second, they said on the issue of the failure to investigate the alleged telephone calls from the Newtown Tavern and Hamburger Heaven, both according to the Nevada Supreme Court right there in the neighborhood, that second claim of failure to investigate the alibi simply was unsupported by evidence, and therefore, Holmes never carried his burden of proof on the first Strickland prong, which is the deficient performance prong. So unless you have any specific questions, I think you've got a clear handle on the issues. The bottom line is under AEDPA, I don't believe, and I'm in agreement with Judge Pro, that the Nevada Supreme Court, in dealing with what basically were pretty gargantuity claims, simply did not fail to apply in a reasonable manner existing Supreme Court decision. Thank you. Thank you, sir. In conclusion, back to the felony murder issue. The Attorney General argued, again, about the underlying felony, the robbery, and what's important to remember here is that the Justice of the Peace didn't even find that there was slight, even marginal, evidence of that underlying felony. The case is cited, and what is inherently wrong and why Hicks comes into play, and where you get to AEDPA under that, is the Nevada Supreme Court opinion. And again, I'd point you to an EOR-205. Consistent with our approach, the jurisdictions have held that the State may seek a settlement, and then there is a list of cases, none of which include Nevada cases. It does include a Ninth Circuit case. But the problem with those cases, and the problem with that statement, consistent with our approach, is that those cases are completely inopposite to the situation here. Those cases, the felony was properly before the jury. Not a situation here, where the felony's not properly before the jury, and that the way that you get through AEDPA is through Hicks. I would respectfully disagree with the Attorney General in that these claims are not garden variety claims when Mr. Holmes is spending his life in prison as a result of the trial that he had in Nevada. He has that right, even under AEDPA, to have constitutional review of those claims. And the constitutional review here under Hicks is that you can't have two sets of books in Nevada, and that this circuit needs to take a look at that and find that there was a constitutional violation of his right to due process in having that. And with that, I would thank you. Case 07-15184, Holmes v. Helling, is now submitted. We're sad to lose that class. We were all going to come down and talk to you when we got through. Okay. We're very sorry. Thank you. Case 07-15382, Park Village v. Mortimer.
judges: Trott, Smith, Shadur